**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| LAURA DICKENS, | No. EDCV 09-490 CW |
| Plaintiff, | DECISION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | |
| Defendant. | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks review of the Commissioner's denial of disability benefits.  As discussed below, the court finds that judgment should be entered in favor of Defendant, affirming the Commissioner's decision.

## I.  BACKGROUND

Plaintiff Laura Dickens was born on May 2, 1962, and was forty-six years old at the time of her latest administrative hearing. [Administrative Record ("AR") 89, 907.]  She has a high school

1

education, with special education, and no past relevant work
experience. [AR 446.]  Plaintiff alleges disability on the basis of a
learning disorder and pain in her lower back and leg. [AR 126.]

## II.  PRIOR PROCEEDINGS

Plaintiff initially applied for supplemental security income
("SSI") on November 16, 2000, alleging disability since September 16,
2000. [AR 84.]  The application was denied initially and upon
reconsideration, and Plaintiff did not pursue further appeals.
Plaintiff filed a second SSI application, the subject of these
proceedings, on January 14, 2002, alleging disability since September
16, 2000. [Id., AR 89.]  An administrative hearing was held on May 15,
2003, before an Administrative Law Judge ("ALJ").  [AR 379.]
Plaintiff appeared with her friend, Harriet Owsley, and testimony was
taken from Plaintiff and Ms. Owsley. [Id.]  The ALJ denied benefits in
a decision filed on June 6, 2003. [AR 38.]  On August 14, 2003, the
Appeals Council remanded the case for further administrative
proceedings. [AR 73.]  A second administrative hearing was held on
November 4, 2003, during which Plaintiff was granted an extension of
time to obtain counsel. [AR 407-12.]  A third hearing was held on
February 5, 2004. [AR 413.]  Plaintiff appeared with counsel, and
testimony was taken from Plaintiff and vocational expert Joseph
Mooney. [AR 414.]  The ALJ denied benefits in a decision dated March
8, 2004. [AR 16.]  When the Appeals Council denied review on May 19,
2004, the ALJ's decision became the Commissioner's final decision. [AR
2.]

Plaintiff filed a complaint in the district court on July 26,
2004 (Case No. EDCV 04-855 CW).  On January 24, 2006, the court issued
a decision and order remanding the matter for further administrative

proceedings.

A fourth administrative hearing was held on September 6, 2006, before a new ALJ. [AR 772.]  Plaintiff appeared with counsel, and testimony was taken from Plaintiff and vocational expert Sandra Fioretti. [AR 773.]  The ALJ denied benefits in a decision dated December 7, 2006. [AR 447.]

Plaintiff filed a complaint in the district court on April 11, 2007 (Case No. EDCV 07-361 CW).  On January 8, 2008, the court issued a decision and order remanding the matter for further administrative proceedings.

A fifth administrative hearing was held on June 28, 2008. [AR 907.]  Plaintiff appeared with counsel, and testimony was taken from Plaintiff, medical expert Joseph Malancharuvil, and vocational expert Sandra Fioretti. [AR 908.]  The ALJ denied benefits in a decision dated January 20, 2009. [AR 804.]

The present complaint was lodged on March 6, 2009, and filed on March 16, 2009.  On August 13, 2009, Defendant filed an Answer and Plaintiff's Administrative Record ("AR").  On October 28, 2009, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

### III.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not

3

1  supported by substantial evidence in the record, the court may reject
2  the finding and set aside the decision to deny benefits.  See Aukland
3  v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v.
4  Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240
5  F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094,
6  1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
7  1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada
8  v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

9      "Substantial evidence is more than a scintilla, but less than a
10 preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence
11 which a reasonable person might accept as adequate to support a
12 conclusion." Id.  To determine whether substantial evidence supports
13 a finding, a court must review the administrative record as a whole,
14 "weighing both the evidence that supports and the evidence that
15 detracts from the Commissioner's conclusion." Id.  "If the evidence
16 can reasonably support either affirming or reversing," the reviewing
17 court "may not substitute its judgment" for that of the Commissioner.
18 Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

19                         **IV.  DISCUSSION**

20   **A.   THE FIVE-STEP EVALUATION**

21     To be eligible for disability benefits a claimant must
22 demonstrate a medically determinable impairment which prevents the
23 claimant from engaging in substantial gainful activity and which is
24 expected to result in death or to last for a continuous period of at
25 least twelve months.  Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at
26 721; 42 U.S.C. § 423(d)(1)(A).

27     Disability claims are evaluated using a five-step test:
28          Step one: Is the claimant engaging in substantial

4

gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
     Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
     Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
     Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
     Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1]  Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155

1    education, and work experience, a claimant can perform other work

2    which is available in significant numbers.  <u>Tackett</u>, 180 F.3d at 1098,

3    1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

4        **B.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

5        Here, the ALJ found that Plaintiff had not engaged in substantial

6    gainful activity since her disability application date (step one);

7    that Plaintiff had "severe" impairments, namely borderline

8    intellectual functioning and residuals of lumbar spine surgery (step

9    two); and that Plaintiff did not have an impairment or combination of

10   impairments that met or equaled a "listing" (step three).  [AR 804-

11   805.]  The ALJ found Plaintiff had an RFC for light work, except for

12   occasional climbing, balancing, stooping, kneeling, crouching, or

13   crawling; no work at unprotected heights or with dangerous machinery;

14   and limitation to entry level work with simple repetitive tasks. [AR

15   806-807.]  Plaintiff had no past relevant work (step four). [AR 808.]

16   The ALJ adopted the findings of the vocational expert, who testified

17   that a person with Plaintiff's RFC could perform work existing in

18   significant numbers, including cleaner, small product assembler, and

19   bench assembler (step five). [AR 809.]  Accordingly, the ALJ found

20   that Plaintiff was not "disabled" as defined by the Social Security

21   Act. [<u>Id.</u>]

22       **C.  ISSUES IN DISPUTE**

23       The parties' Joint Stipulation identifies the following disputed

24   issues:

25       1.    Whether the ALJ complied with the court's remand order to

26

27   n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a
     nonexertional limitation.  <u>Penny</u>, 2 F.3d at 959; <u>Perminter v. Heckler</u>,
28   765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

consider the opinion of Plaintiff's treating physician, Dr. Frederick Lloyd;

2.   Whether the ALJ complied with the court's remand order to pose a complete hypothetical question to the vocational expert;

3.   Whether the ALJ properly considered the state agency physician's finding regarding Plaintiff's personality disorder and multiple moderate limitations;

4.   Whether the ALJ posed a complete hypothetical question to the vocational expert; and

5.   Whether the ALJ properly found that Plaintiff could perform the jobs of cleaner, small products assembler and bench assembler.

[JS 2-3.]

**D.   ISSUES ONE AND TWO:  DR. LLOYD**

In Issue One, Plaintiff contends that the ALJ failed to comply with the court's decision and order issued on January 9, 2008, directing consideration of the opinion of Dr. Frederick Lloyd, Plaintiff's treating physician. [JS 3-4.]  In Issue Two, Plaintiff argues that the ALJ erred by posing, at the latest administrative hearing, a hypothetical question to the vocational expert that did not incorporate all of Plaintiff's limitations established by the treating medical evidence. [JS 8-9.]

**Background**

According to the record, Plaintiff received treatment at the Rancho Paseo Medical Group from Dr. Lloyd in 2002 and 2003. [AR 342-56.]  In July 2004, Dr. Lloyd completed a Short-Form Evaluation for Mental Disorders, stating that Plaintiff had depression and anxiety.

7

1  [AR 702-05.]  Upon mental status examination, Dr. Lloyd wrote that
2  Plaintiff was irritable and apathetic, mildly impaired in
3  concentration, of average intelligence, anxious but mostly depressed,
4  previously suicidal, and mildly impaired in judgment. [AR 702-04.] Dr.
5  Lloyd noted that Plaintiff was attending counseling once a week. [AR
6  704.]

7      With regard to mental functioning, Dr. Lloyd wrote that Plaintiff
8  was "good" in her ability to understand, remember and carry out simple
9  instructions, but "fair" in her ability to understand, remember and
10 carry out complex instructions; maintain concentration, attention and
11 persistence; perform activities within a schedule and maintain regular
12 attendance; complete a normal workday and workweek without
13 interruptions from psychologically based symptoms; and respond
14 appropriately to changes in a work setting. [AR 705.]  The evaluation
15 defined "fair" as "the evidence supports the conclusion that the
16 individual's capacity to perform the activity is impaired, but the
17 degree/extent of the impairment needs to be further described." [Id.]
18 No further description was provided.

19     In the Decision and Order of January 9, 2008, the court reversed
20 the Commissioner's decision and remanded the matter for further
21 consideration of Dr. Lloyd's opinion and additional inquiry as to
22 Plaintiff's mental functional capacity as it related to her ability to
23 do other jobs in the national economy.

24     Upon remand, the ALJ held an administrative hearing on June 28,
25 2008, and heard the testimony of Dr. Malancharuvil, a medical expert.
26 [AR 908.]  Dr. Malancharuvil testified that based on his review of the
27 record, Plaintiff did not meet or equal the requirements of any listed
28 mental impairments, particularly Listing 12.05 (Mental Retardation) or

1  12.08 (Personality Disorder). [AR 912-13.]  Plaintiff's results on
2  psychological testing indicated profound mental retardation but could
3  not be validated because she failed to put forth an adequate effort
4  during multiple attempts at testing, and the results were at odds with
5  Plaintiff's condition, ability to respond to questions, and history.
6  [AR 912-13.]  Dr. Malancharuvil concluded that Plaintiff should be
7  limited to work involving simple, repetitive tasks in a non-academic
8  and habituated setting, with no demand for complex reading or
9  hazardous operations. [AR 913.]  He also noted that Plaintiff had not
10 received mental health treatment for the previous three years, noted
11 that Plaintiff explained that she lacked funds for treatment, and
12 concluded that it was "suggestive that she is able to maintain without
13 her mental health treatment." [AR 914.]

14      Later in the hearing, the vocational expert testified that a
15 person with an RFC for routine, repetitive tasks at the entry level
16 and with certain exertional limitations could perform the jobs of
17 cleaner, small products assembler, and bench assembler. [AR 918.]

18      In the latest administrative decision, the ALJ evaluated the
19 opinion of Dr. Lloyd in light of the record following his treatment
20 and Dr. Malancharuvil's testimony, and made the following findings.
21 [AR 805-806.]  Dr. Lloyd, by his own admission, was a family
22 practitioner. [AR 805.]  His clinical notes contained no significant
23 objective clinical findings. [Id.]  Dr. Lloyd was under the impression
24 that Plaintiff was receiving weekly counseling, but this was
25 uncorroborated and unlikely, given that the treating mental health
26 record ended in March 2003. [Id.]  Although a treating psychiatrist
27 assigned Plaintiff with a Global Assessment of Functioning ("GAF")
28 score of 50, she received a score of 65 three weeks later, which

9

1  indicated a mild or nonsevere degree of limitation.[2] [Id.]  Dr.

2  Malancharuvil emphasized that Plaintiff had feigned having mental

3  retardation during testing, and that she had only a mild degree of

4  limitation in performing daily activities and social functioning, and

5  a mild to moderate degree of limitations in maintaining concentration,

6  persistence, and pace. [AR 805-806.]  Accordingly, the ALJ concluded

7  that in light of the vagueness of Dr. Lloyd's findings, the

8  consistency between the treating record and Dr. Malancharuvil's

9  opinion, Plaintiff's "quite conservative treatment in 2006," and the

10  "lack of documentation since then," that Plaintiff had only a "mild to

11  moderate degree of limitation" in areas of mental functioning. [AR

12  806.]

13       Based on the testimony of Dr. Malancharuvil and the vocational

14  expert, and based on review of the record, the ALJ concluded that

15  Plaintiff was not "disabled."

16       **Discussion**

17       In Issue One, Plaintiff specifically argues that the ALJ's

18  evaluation of Dr. Lloyd's opinion failed to comply with the court's

19  order for two reasons:  it was not appropriate to reject his opinion

20

21       [2]  A GAF score represents a clinical evaluation of an
individual's overall level of functioning.  Here, the record indicates
22  that on March 6, 2003, Dr. Ewa Gosek completed a mental health
assessment of Plaintiff that included a GAF score of 50. [AR 654.]  On
23  March 31, 2003, Dr. Gosek completed a clinical evaluation that
included a "current" GAF score of 65. [AR 651.]
24       A score of 51 through 60 signifies moderate symptoms, such as
flat affect or occasional panic attacks, or moderate difficulty in
25  social, occupational, or school functioning, such as having few
friends or conflicts with peers or co-workers.  A score in the range
26  of 61 through 70 denotes some mild symptoms, such as depressed mood or
mild insomnia, or some difficulty in social, occupational, or school
27  functioning, such as occasional truancy or theft within the household,
but indicate that the subject is generally functioning pretty well and
28  has some meaningful interpersonal relationships.

1   because he was a family practitioner, and because the ALJ failed to

2   recontact Dr. Lloyd to clarify his opinion. [JS 4.]  In Issue Two,

3   Plaintiff specifically argues that the ALJ improperly failed to

4   account for Plaintiff's diagnosis of a GAF score of 50. [JS 8-9.]

5   Plaintiff's claims are without merit.

6        First, the objections Plaintiff raises to the ALJ's evaluation of

7   Dr. Lloyd's opinions fail to account for the evaluation on the whole.

8   Although the fact that Dr. Lloyd is a family practitioner does not

9   necessarily call into question his opinion about Plaintiff's mental

10  condition, see Lester, 81 F.3d at 833, the record clearly indicates

11  that the ALJ's evaluation did not depend on that reason but on several

12  others.  Although Plaintiff fails to mention these reasons, which were

13  described above, the court's review of the record indicates that the

14  ALJ's evaluation complied with the court's order, and that the

15  evaluation was supported by substantial evidence.  Dr. Lloyd's opinion

16  was not entitled to controlling weight because it was not supported by

17  significant clinical findings; there is no indication that Plaintiff

18  received long-term treatment[3]; and the opinion of the medical expert,

19  to the extent it called into question Dr. Lloyd's opinion, was

20  supported by the record.[4]  See Holohan v. Massanari, 246 F.3d 1195,

21

22       [3]  The ALJ noted that the record indicated that Plaintiff
     received only "routine refills" for Prozac in 2006, but that there was
23   no documented medical treatment since May 2007. [AR 805; see AR 875.]
     The ALJ concluded that "any emotional problem she may have has been
24   controlled and stable with or without the minimal treatment she was
     receiving in 2006 and 2007." [Id.]
25

26       [4]  A psychological evaluation conducted in July 2004 indicated
     that Plaintiff had a personality disorder not otherwise specified, but
27   that she could perform simple and repetitive tasks with minimal
     supervision. [AR 695.]  A psychological evaluation completed in March
28   2002 reached a similar conclusion that Plaintiff had an antisocial
     personality disorder, but that she could perform simple, repetitive

1202 n. 2 (9th Cir. 2001)(stating that a physician's opinion may be
"entitled to little if any weight" where the physician "presents no
support for her or his opinion"); Morgan v. Commissioner of Social
Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)(opinion of a
nonexamining, testifying medical advisor may serve as substantial
evidence when it is supported by other evidence in the record and is
consistent with it).

Plaintiff's additional claim in Issue One, that the ALJ should
have recontacted Dr. Lloyd, is without merit.  The court's order of
remand did not specifically require the ALJ to recontact Dr. Lloyd,
nor was it necessary for an adequate evaluation of the evidence.  See
Bayliss v. Barnhart, 427 F.3d 1211, 1217 (th Cir. 2005)(recontacting
treating physician not required when ALJ, with support in the record,
found the evidence adequate to make a determination regarding
disability).

Plaintiff's assertion in Issue Two that the hypothetical question
asked to the vocational expert should have included Plaintiff's GAF
score of 50 fails to account for the score of 65 she received a few
weeks later.  Moreover, GAF scores are not essential to an ALJ's
determination of a claimant's RFC.  See McFarland v. Astrue, 288 Fed.
Appx. 357, 359 (9th Cir. 2008)(ALJ's failure to address claimant's
three GAF scores did not constitute legal error); Howard v.
Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002).
Finally, Plaintiff's GAF scores indicated only mild to moderate
limitations, and they were fully accounted for in the ALJ's finding
that Plaintiff had a "mild to moderate degree of limitation" in mental

and more complex manual skills. [AR 256.]

12

1  functioning. [AR 806.]

2        E.   ISSUES THREE AND FOUR: STATE AGENCY PHYSICIAN FINDINGS

3        In Issue Three, Plaintiff contends that the ALJ improperly failed

4  to consider evaluations completed by state agency physicians in 2004.

5  [JS 11-12.]   In Issue Four, Plaintiff contends that the ALJ erred by

6  asking hypothetical questions to the vocational expert that did not

7  include the limitations reflected in the state agency evaluations. [JS

8  13-14.]

9        **Background**

10       On July 28, 2004, Dr. Emanuel Rosen completed a Psychiatric

11 Review Technique Form ("PRTF") based on his review of the record. [AR

12 740-53.]  Dr. Rosen indicated that Plaintiff had a depressive disorder

13 not otherwise specified and a personality disorder not otherwise

14 specified. [AR 743, 747.]  Dr. Rosen indicated that a Mental Residual

15 Functional Capacity ("MRFC") evaluation should be completed. [AR 740,

16 752.]

17       On the same day, an MRFC evaluation was completed by a state

18 agency physician.[5] [AR 754-58.]  The evaluation indicated that

19 Plaintiff was "moderately limited" in two areas of mental functioning:

20 the ability to carry out very short and simple instructions, and the

21 ability to interact appropriately with the general public. [AR 754-

22 55.]  The evaluation indicated that Plaintiff was "not significantly

23 limited" in other listed areas of mental functioning. [Id.]  The

24 evaluation concluded that Plaintiff had sufficient understanding,

25 memory, pace, and persistence to perform "one and two step repetitive

26 work tasks." [AR 756.]  The evaluation also indicated that Plaintiff

27 _____

28       [5]  The physician's signature is illegible. [AR 757.]

13

could interact appropriately with co-workers and supervisors, but that she should avoid contact with the general public. [Id.]  Finally, the evaluation indicated that Plaintiff can "adapt appropriately to a variety of work setting situations and changes." [Id.]

**Discussion**

Plaintiff argues that the ALJ committed reversible error by failing "to discuss or even mention" the state agency review physicians' findings that Plaintiff has a depressive disorder and personality disorder, and is moderately limited in her ability to carry out very short and simple instructions and interact appropriately with the general public. [JS 11.]  Plaintiff also argues that the ALJ erred by failing to incorporate these findings in the RFC determination. [JS 14.]

However, Plaintiff's argument fails to account for the state agency physician's conclusion, based on the record, that Plaintiff was capable of performing "one and two step repetitive work tasks."  This was consistent with the ALJ's RFC determination, which limited Plaintiff to "entry level work and simple repetitive tasks." Moreover, none of the jobs cited by ALJ as indicative of Plaintiff's ability to work – cleaner, bench assembler, small products assembler – requires significant contact with people.  See Dictionary of Occupational Titles ("DOT") Sections 323.687-014 (Cleaner, Housekeeping), 706.684-042 (Bench Assembler), 739.687-030 (Assembler, Small Products).  Accordingly, Issues Three and Four do not warrant reversal of the Commissioner's decision.

**F.   ISSUE FIVE: STEP FIVE FINDING**

Finally, Plaintiff asserts that the three jobs cited by the ALJ at step five of the disability determination, which require a

14

"Reasoning Level" of One or Two, are precluded by Plaintiff's mental functional limitations. [JS 15-16.]  Plaintiff's claim is without merit.

The job of cleaner requires a Reasoning Level of One, which is defined by the Dictionary of Occupational Titles as the ability to "apply commonsense understanding to carry out simple one- or two-step instructions," and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job."  The jobs of Bench Assembler and Small Products Assembler require a Reasoning Level of Two, which is defined as the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions," and "[d]eal with problems involving a few concrete variable in or from standardized situations."

Plaintiff's RFC does not preclude her from performing any of these jobs.  The job of cleaner requires only a Reasoning Level of One, the lowest rung on the developmental scale and well below Plaintiff's mental functional capacity.  See Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005)(describing Reasoning Level One as "applying to the most elementary of occupations" and requiring "only the slightest bit of rote reasoning").  The assembler jobs require a Reasoning Level of Two, which is consistent with Plaintiff's ability to perform simple, repetitive tasks.  See Meissl, 403 F. Supp. 2d at 983-85 (C.D. Cal. 2005) (finding Level 2 reasoning consistent with limitation to simple and repetitive tasks); see also Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)(same); Flaherty v. Halter, 182 F. Supp. 2d 824, 850-51 (D. Minn. 2001)(finding no conflict between Level 2 reasoning and work involving simple, routine, repetitive, concrete, and tangible tasks).  Accordingly, Issue Five

does not warrant reversal of the Commissioner's decision.

## V.   ORDERS

Accordingly, **IT IS ORDERED** that:

1.    The decision of the Commissioner is **AFFIRMED**.

2.    This action is **DISMISSED WITH PREJUDICE**.

3.    The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.


DATED: September 28, 2010

_____
        CARLA M. WOEHRLE
United States Magistrate Judge